[Civ. No. 11893.    Third Dist.    Nov. 8, 1968.]

CALIFORNIA COMPENSATION & FIRE COMPANY, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and MERCED C. AGUILAR, Respondents.

Hanna & Brophy and F. Clinton Murphy for Petitioner.

Eugene C. Treaster, N. Michael Rucka, Everett A. Corten and Selma Mickels for Respondents.

PIERCE, P. J.—Petitioner is the compensation carrier of Capitol Auto Paint Plating Co. Merced Aguilar, an employee of Capitol, filed an application before respondent board for a back injury claimed to have been incurred during and in the course and scope of his employment. An award was made for temporary disability. It directed reimbursement for self-procured medical care and for medical expenses. A petition by the carrier for reconsideration was denied. Thereafter the carrier petitioned this court for a writ of review. In the points and authorities accompanying that petition the following issue, among others, is urged: "Is it proper to allow a doctor a fee as an expert witness where testimony relates to the reasonableness of his charges for examinations and reports?" We granted a writ of review limited to that one issue.

After our examination of the record we reach the conclusion that the question as stated by the petitioning carrier is misleading. It implies that the doctor in question was produced as a witness for the applicant solely or primarily to justify the reasonableness of his charges for examination and reports and that the board allowed a fee for medical testimony to him for that reason. ■■■ The facts are otherwise. The record shows his testimony which the board properly found to be necessarily and reasonably given. The matter of his fee was not even mentioned until cross-examination. We will therefore affirm the board's order.

It will be unnecessary to extend this opinion to include a comprehensive recital of the facts. The doctor in question is Dr. Robert F. Fischel, a chiropractor. He had not· treated Aguilar for his back injury but had examined him and had

filed reports of his diagnosis.[1] He described treatment given by an attending practitioner[2] and made evaluations. Petitioner, prior to the hearing, had retained as an examining doctor an orthopedist, W. P. Magan, Jr., M.D. That doctor had also filed a report. In that report the following statement is contained: "It is my opinion without any question this patient should be subjected to myelography. It seems rather foolish to continue on treating him with something[3] which does not appear to be of much if any help. Under these circumstances I have advised him and am advising yourselves [i.e., petitioner's attorneys] that he should have a myelogram with further evaluation at this time." That report was not received until several days before the hearing. The employee's attorneys contend that it allowed no time for Dr. Fischel to make a further examination of the patient and thereafter prepare and submit a written report. (He did, however, make the examination.) The purpose of calling Dr. Fischel, counsel states, was not to justify his fee but to furnish justification for continuance of the previous chiropractic treatment described by Fischel as "conservative" which had been characterized by Dr. Magan as "foolish." That the stated purpose was also the actual purpose is confirmed by the fact that, as stated, there is nothing whatever in Dr. Fischel's direct testimony which relates directly or indirectly to his fee.[4] On cross-

[1]He stated Mr. Aguilar had a discogenic disease related to a work-induced injury. There was no conflict in the testimony or reports of the doctors representing the applicant and the carrier, respectively, regarding that diagnosis.

[2]Dr. Fischel had not treated Aguilar. Aguilar's employer had referred him to a Dr. Steiner, another chiropractor. Dr. Fischel, like the carrier's expert, was called only for examination and report.

[3]The "something" to which Dr. Magan obviously referred was the chiropractic treatment which Aguilar had been receiving from Dr. Steiner:

[4]Dr. Fischel's testimony on direct examination covered his qualifications as a "chiropractic orthopedist." He stated that "less than 20 per cent" of his practice involved treatment in workmen's compensation matters. He had examined the reports of Dr. Steiner (applicant's treating doctor) and of Dr. Magan. (The latter report had not been seen by him until two days before the hearing.) He testified that the patient had responded well to Dr. Steiner's treatment; that subjective complaints were minimal when Aguilar was not exposed to heavy work. Dr. Fischel does not make myelographic studies. When such studies are indicated he refers patients to neurosurgeons or orthopedic surgeons. Because of possible serious side effects from myelograms he did not believe that that treatment should be recommended unless the need for such surgery was imminent. He said that all of the medical reports regarding the patient had agreed as to the diagnosis (work induced discogenic problems); also the reports had agreed in all other respects excepting that Dr. Magan did not share the opinion of the other two practitioners that manipulative

examination defense counsel questioned Dr. Fischel's education and training. He also had the doctor testify at length regarding the procedures involved in the diagnosis of disc problems. The rest of the cross-examination was directed to the matter of the fees charged by Dr. Fischel for chiropractic examinations, X-rays, and his reports—none of which fees were shown to be materially different from the minimum standard fee schedule. Incidentally, Dr. Magan was produced as an expert by petitioner. His testimony followed Dr. Fischel's (in point of time).

The board found inter alia: "Applicant reasonably and necessarily incurred expense of $252.50 for reports and testimony of Dr. Robert F. Fischel." The record shows without conflict that Dr. Fischel's fee for his examination, X-rays and reports had been $152.50. That meant that $100 had been included as the doctor's fee for testimony.

▇▇▇ Labor Code section 4600 authorizes reimbursement to the employee "for expenses reasonably, actually, and necessarily incurred for X-rays, laboratory fees, medical reports, *and medical testimony* to prove a contested claim." (Italics ours.) Labor Code section 4600 also includes a provision: "Expenses of medical testimony shall be presumed reasonable if in conformity with the fee schedule charges provided for impartial medical experts appointed by the administrative director."

▇▇▇ At oral argument we were informed (and the statement was not disputed) that when a doctor testifies it is assumed he loses at least one-half day from his practice and that $100 is therefore deemed a reasonable minimum fee.

California Administrative Code, title 8, Rules of Practice and Procedure of the Workmen's Compensation Appeals Board, rule 10635, provides: "When the evidence adduced in a cause or proceeding demonstrates that expenses, the subject of Labor Code section 4600, were incurred, recovery thereof will be allowed as they appear, unless: (1) Proof of unreasonableness is entered; or (2) The record of said cause or proceeding makes manifest the unreasonableness of an expense or the expenses claimed."

▇▇▇ Labor Code section 3209.5 provides in material part: "Medical . . . treatment . . . includes . . . services . . . by

---

treatment would help. Dr. Fischel pointed out, however, that Dr. Magan had given his report before Aguilar had received recent treatment from Dr. Steiner, and he added: "And I'm quite certain that in his present condition no one would recommend . . . surgery should be done at this time, *because he's much improved.*" (Italics ours.)

. . . chiropractic practitioners as licensed by California State law and within the scope of their practice. . . .'' Section 3209.5 was enacted in 1945 and has not been amended. (See Stats. 1945, ch. 629.)

There is no express statutory statement including the *testimony* of a chiropractor as being reimbursable. It is to be noted, however, that the inclusion of any allowance for medical testimony under Labor Code section 4600 is a comparatively recent addition to the list of reimbursable items included therein. (Stats. 1959, ch. 1189, § 9, p. 3278.) We can conceive of no reason why the Legislature would intend to make any distinction between an allowance for the testimony of members of the several schools of practitioners whose reports within the field of their competence are permitted to be considered by the board. ■■■ Its only limitation is that reimbursement be allowed for testimony which is ''reasonably, actually, and necessarily incurred.'' Here the board expressly found that Dr. Fischel's testimony *was* within that limitation. Also there was no substantial showing made that the testimony given by the chiropractor was in a field beyond or outside the scope of his training or knowledge. Upon this record and under the circumstances described we hold the finding was reasonable.[5]

The order of the board is affirmed. This court finds, pursuant to Labor Code section 5801, there was no reasonable basis for this petition. Therefore the cause is remanded to the Appeals Board with direction to make a supplemental award awarding to the attorney for Merced C. Aguilar a reasonable attorney's fee for services in connection with the defense of the petition for writ of review. Such fee shall be in addition to the amount of compensation otherwise recoverable and shall be paid as part of the award by the party liable to pay such award.

Friedman, J., and Regan, J., concurred.

On December 5, 1968, the judgment was modified to read as printed above.

---

[5] It is true that during the course of his discussion the referee made a statement as to a reason why Dr. Fischel's testimony was necessary; that it was ''to defend the reasonableness of his charges which have been placed in issue by the defendant.'' The referee, obviously, was speaking retrospectively. We cannot and do not substitute this observation by the referee as a finding in lieu of the formal finding actually made.